## PECK et al. v. SHELL OIL CO., Inc., et al.

No. 10280.

Circuit Court of Appeals, Ninth Circuit.

April 15, 1944.

Hackley & Hursh, Roy C. Hackley, Jr., and Jack E. Hursh, all of San Francisco, Cal., for appellants.

Chas. M. Fryer, Alfred C. Aurich, and Harold I. Johnson, all of San Francisco, Cal., for appellees.

Before MATHEWS, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

In an action upon a contract, brought in the District Court on the ground of diversity of citizenship of the parties, judgment was entered for defendants. Plaintiffs appeal.

On April 8, 1938, plaintiff-appellants, Peck and Ruddle, entered into a "license agreement" with Shell Oil Company, predecessor of appellant Shell Oil Company, Incorporated. (Both companies are hereinafter referred to as Shell.) Therein Peck and Ruddle warranted that they owned all rights "to a new and useful core binding composition hereinafter referred to as 'Core-Min-Oil,' consisting of two components, a secret solution and asphalt emulsion, and to new compositions for other foundry uses such as core covering." They warranted further that "Core-Min-Oil" was fully described in three specified patent applications. They then granted to Shell "an exclusive license to make, use or sell" the product covered by the patent applications "and other inventions in so far as they relate to compositions for foundry use owned or controlled by Peck or Ruddle." A provision was included that "Shell Oil shall diligently attempt to sell Core-Min-Oil and other compositions for foundry use as covered by said patent applications or later patents." In a paragraph detailing a scale for payments Shell agreed to pay royalties "on all their sales of Core-Min-Oil and other compositions for foundry use."

The contract was to remain in force until the expiration of the last of appellants' patents covering Core-Min-Oil. However, Shell was given six months from a specified date to investigate the patent situation with respect to Ruddle's oil; should it be found unsatisfactory, Shell could terminate the agreement. Shell could also terminate after five years from the date of the contract by a thirty-day notice in writing to Peck and Ruddle.

Core-Min-Oil was defined in the agreement to mean "the core binding composition containing asphalt emulsion coming within the claims of any pending application or issued patent owned or controlled exclusively by Peck and Ruddle."

Extensive investigations into Ruddle and other core oils were conducted by Shell engineers over a long period of time. A few tests were made even before the contract was signed, but not until after the signing did Ruddle disclose the formula of his "secret solution." Sodium silicate, sodium fluo-silicate and aluminum sulphate were the ingredients. Finally, by a letter of July 26, 1939, Shell notified appellants of the impossibility of developing a commercial product in accordance with the Ruddle patent and of its election to cancel the agreement of April 8 on the ground of failure of consideration. On March 8, 1940, Shell wrote them of its election to terminate under the five-year termination provision. (Shell's letter of March 8 served as notice of termination pursuant to the paragraph providing for termination at any time after five years from the date of the agreement, i.e., April 8, 1938; therefore, although the parties do not discuss the point, the contract was not enforceable after April 8, 1943, a date subsequent to the judgment of the district court herein.)

Appellants, residents of California, alleging that over $3,000 was involved in the

matter, brought suit in the federal District Court against Shell Oil Company, Incorporated, of Virginia and Shell Development Company of Delaware. They prayed for a decree compelling specific performance of the contract, awarding damages in a sum designated only as exceeding $100,000, and ordering an accounting of royalties due. The District Court held in favor of defendant-appellees. The court found that the parties had entered into a license agreement under certain patent applications relating to a sodium silicate core oil, that Shell had diligently tried to perform all the conditions of the agreement, that the core oil licensed to Shell was a practical failure, unmarketable, and valueless, that there was no evidence of any damage, actual or possible, resulting from Shell's cancellation of the agreement, and that there was no confidential disclosure to defendant corporations regarding the use of asphalt emulsion in a core oil. As conclusions of law the court determined that the license agreement was unenforceable because of failure of consideration, that it was impossible of performance, that its cancellation by Shell was justified, and that no confidential relationship existed between the parties and none was violated.

In their brief under the heading "Statement of Points on Appeal" appellants claim as error: (1-9) the making of findings and conclusions in favor of appellees; (10-19) the failure to find and to render judgment in favor of appellants; (20) the awarding of costs to appellees; (21) the showing of prejudice against appellants, with a list of pages in the typewritten trial transcript (not the printed transcript herein) where statements showing the alleged prejudice appear; (22-39) rulings of the court as to the admission of evidence.

■■ It should be noted at the outset that appellants have completely failed to comply with rule 20(d)[1] of the rules of this court in that no numbered specifications of error are included in their brief. They merely refer to a page in the printed transcript where their statement of points on appeal (filed in accordance with our rule 19) appears. Such a reference does not satisfy rule 20(d). Also completely ignored is the requirement that the grounds of an objection urged at the trial to the admission or rejection of evidence together with the substance of the evidence should be quoted when error in such admission or rejection is claimed. The statement of points in the transcript includes none of the detail specified.

■ With respect to many of the "points" stated by appellants no argument or discussion is presented in their opening brief. Therefore, those "points" are deemed abandoned and need not be considered herein. Moore v. Tremelling, 9 Cir., 100 F.2d 39, 43; Paramount Productions, Inc. v. Smith, 9 Cir., 91 F.2d 863, 866; Liquid Veneer Corporation v. Smuckler, 9 Cir., 90 F.2d 196, 206; Forno v. Coyle, 9 Cir., 75 F.2d 692, 695.

In the principal argument of appellants it is attempted to refute the finding of the District Court that the core oil licensed to Shell was a practical failure, useless and worthless. A detailed review of the evidence is offered in support of the contention. Equally complete is appellees' response. The evidence shows that Shell had never before manufactured or sold core oils. It was interested in appellants' oil as a possible outlet for its asphalt products. It knew before it signed the agreement in suit that Core-Min-Oil needed further development to prepare it for the market, and one of its engineers had proved that Ruddle's formula was useful only if cores were dried in ovens where the gases of combustion were eliminated. Thereafter, the contract was signed, and experimentation was conducted on a large scale by technicians of Shell and of Shell Development Company, also an appellee. They tried to perfect Ruddle's sodium silicate core oil. In addition, they tested other combinations of various oils seeking a marketable core oil. Even after the can-

---

[1] Rule 20(d) of the Rules of the United States Circuit Court of Appeals for the Ninth Circuit. Appellant's brief shall contain: "In all cases save those of admiralty, or criminal nature, a specification of errors relied upon which shall be numbered and shall set out separately and particularly each error intended to be urged. When the error alleged is to the admission or rejection of evidence the specification shall quote the grounds urged at the trial for the objection and the full substance of the evidence admitted or rejected, and refer to the page number in the printed or typewritten transcript where the same may be found. * * * In equity and admiralty cases, and at law when findings are made, the specification shall state as particularly as may be wherein the findings of fact and conclusions of law are alleged to be erroneous. * * *."

cellation notice of July 26, 1939, was sent to appellants, the research was continued. Laboratory reports showed that, although Ruddle's original formula manifested certain advantages, it was of no value for practical purposes. The additional experimentation revealed that an albino-asphalt-linseed oil emulsion held the most promise for a commercially useful core oil. However, Shell, having spent over $16,000 and many months in the investigation of core oils, and realizing that as yet no product was ready for the market, decided completely to "abandon all efforts to manufacture or sell or exploit any kind or type of core oils or other products for related foundry uses" and notified appellants of the fact by the letter dated March 8, 1940.[2] No core oil was ever sold by Shell, and no profit made from such a source.

■ The chief characteristic of the evidence in the instant case is its indefiniteness and uncertainty. The conflict between the parties is not so much in the evidence itself as in the argument stemming therefrom. Our study of the record convinces us, in accord with the District Court, that the license agreement herein related solely to sodium silicate core oils, that no marketable core oil was developed by appellees in spite of the application of diligent effort to the problem, and that as a result failure of consideration made the provisions of the license agreement unenforceable. It follows that appellants suffered no damage

traceable to Shell's cancellation of the license agreement, and no damage was proved herein.

■ Appellants contend that appellees have violated confidential disclosures by publicizing the formula of Core-Min-Oil in three reports to many firms and individuals. The license agreement contains the following paragraph: "Peck and Ruddle and Shell Oil, its affiliated, subsidiary and parent companies, agree that they will use their best efforts to prevent information concerning the formula of Core-Min-Oil and its method of manufacture from being obtained by unlicensed third parties." The provision on its face shows that the parties contemplated knowledge of the formula on the part of Shell's affiliated, subsidiary and parent companies, for otherwise there would be no need to include them in the promise of secrecy. The only testimony relating to the identity of the distributees of the reports in question indicates that all were connected with Shell. Consequently, there is no evidence in the case indicating that any of the reports were circulated to "unlicensed third parties."[3]

■ For the first time in the reply brief appellants develop an argument supporting the alleged error of bias and prejudice on the part of the District Court. In accordance with the principle heretofore set forth the error is deemed abandoned by the failure to discuss it in the opening brief.

---

[2] The letter continued: "The time, effort and money heretofore expended by us in attempting to successfully manufacture the products contemplated by the pending applications above mentioned [Ruddle patent applications] has resulted only in failure and in the development of facts which demonstrate and convince us that the subject matter of the applications is such that it is not susceptible of successful exploitation." The same letter gave notice of election to terminate under the five-year termination provision of the agreement.

[3] Not even appellant Ruddle's testimony supports his claim of a disclosure of confidential information. Record, Vol. III, pp. 1457, 1458: "Q. * * * I call your attention to Paragraph 17 of your complaint which appears on page 9, in which you allege, under oath: "' '* * *; that defendants, acting jointly and severally, threatened to disclose, and upon information and belief are alleged to have disclosed, to the public in

general, portions or all of said confidential disclosures of plaintiffs to said Shell Oil Company and to defendants.'
"I show you the portion of the complaint which I read, with the same instruction to read all or any part thereof that you desire, and I want to ask you to give me the names of any person or persons to whom either of the defendants herein disclosed your alleged confidential disclosure to Shell. A. I know of none.
"Q. Do you know of any disclosure by either of the defendants herein to anyone of the formula of your Core-Min-Oil which you disclosed to Shell after the signing of the contract?' A. No.
"Q. So far as you know, Shell has never disclosed to the public in general, or to anyone, portions or all of your alleged confidential disclosure, have they? A. Not to my knowledge.
"Q. Do you know of any instance in which the defendants herein threatened to disclose to anyone the alleged confidential disclosure made by you to Shell? A. No, I don't."

However, we have examined the record herein and have discovered no bias or prejudice.

Affirmed.