Alice Madeleine LABORDE,
Plaintiff/Appellant,

v.

The REGENTS OF the UNIVERSITY OF CALIFORNIA, Defendants/Appellees.

No. 80–5718.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1982.

Decided April 22, 1982.

As Modified Sept. 3, 1982.

---

John G. Sobieski, Los Angeles, Cal., argued, for plaintiff/appellant; Lada S. Marx, Los Angeles, Cal., on brief.

Christine Helwick, Berkeley, Cal., argued, for defendants/appellees; John Lundberg, Berkeley, Cal., on brief.

Before CHOY, KENNEDY, and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

Alice Laborde started teaching at the University of California at Irvine in 1965 as an assistant professor. In 1970 she was awarded tenure as an associate professor in the French and Italian Department. Laborde was considered for promotion to full professor several times after the 1973–74 academic year. Each time the University decided against promotion.

Laborde brought an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, alleg-

ing that the University's decision not to promote her to full professor after 1975 was based on an unlawful discrimination against her sex.[1] She appeals the dismissal of her disparate treatment claim.[2] The district court, 495 F.Supp. 1067, granted judgment for the University, finding that Laborde had established a case of prima facie discrimination, but that the University's decision not to promote her was based on her "inadequate" scholarship, and not her sex. This finding was not clearly erroneous. We affirm.

The Supreme Court recently restated the correct order and allocation of proof in Title VII disparate treatment cases:

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.*, at 802, 93 S.Ct. at 1824. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.*, at 804, 93 S.Ct. at 1825.

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (footnote omitted). *Accord, Lynn v. Regents of the University of California*, 656 F.2d 1337, 1341 (9th Cir. 1981).

Laborde had the initial burden of establishing a prima facie case of discrimination. We recently adapted the *McDonnell Douglas* elements of a prima facie case to a charge of sex discrimination in the academic context. *Lynn*, 656 F.2d at 1341. *See Smith v. University of North Carolina*, 632 F.2d 316, 340–41 (4th Cir. 1980). Laborde met this burden by showing that 1) she is a member of a class protected by Title VII, 2) she met the minimum qualifications to be considered for promotion to full professor, 3) she was denied promotion, and 4) men with similar qualifications have been promoted to full professor.

A prima facie case was established in part through the use of statistical evidence.[3] *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 339, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396 (1977); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973); *O'Brien v. Sky Chefs, Inc.*, 670 F.2d 864, 866–67 (9th Cir. 1982); *Lynn*, 656 F.2d at 1342–43 & n.3. The statistics raised an inference that the shortage of women at the University was the

---

1. 42 U.S.C. § 2000e–2(a)(1) states:

   (a) It shall be an unlawful employment practice for an employer—

   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . .

2. The district court stated that Laborde had shown statistically that the employment policies of the university may have unwittingly achieved an unlawful discriminatory result. The district court however did not discuss a disproportionate impact claim nor did the appellant pursue a disproportionate impact claim. She confined her argument to her disparate treatment claim. We confine our review to the issues raised on appeal. *See* Fed.R.App.Pro. 28(a)(2); *U. S. for Use and Benefit of Greenhalgh v. F. D. Rich Co., Inc.*, 520 F.2d 886, 890 n.4 (9th Cir. 1975); *Dower v. United Air Lines, Inc.*, 329 F.2d 684, 685 (9th Cir. 1964); *Peck v. Shell Oil Co.*, 142 F.2d 141, 143 (9th Cir. 1944). *See also United States v. White*, 454 F.2d 435, 439 (7th Cir. 1971), *cert. denied*, 406 U.S. 962, 92 S.Ct. 2070, 32 L.Ed.2d 350 (1972); *Kletschka v. Driver*, 411 F.2d 436, 446–47 (2d Cir. 1969).

3. Although the district court appeared to assume that statistical evidence alone can establish a prima facie case, we do not reach the question. Laborde independently satisfied many of the prima facie requirements stated in *Lynn*.

result of a general pattern of discrimination favoring men.[4] Statistical evidence of a sex-based disparity in hiring or promotion is a relevant, though not necessarily sufficient fact in establishing a prima facie case of disparate treatment.[5] The plaintiff also must prove that she was objectively qualified for the position or promotion. That Laborde was considered by the University for promotion is sufficient proof that she met the minimum objective qualifications, although statistical evidence might also have been used to help meet this requirement. *Id.*, at 1342.

■ After Laborde had established a prima facie case, the burden of production shifted to the University "to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected . . . for a legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. *See Lynn*, 656 F.2d at 1344.

The University met this burden by offering evidence that Laborde was repeatedly denied promotion to full professor because she failed to meet the University's standards for scholarship and research.

The burden then shifted back to Laborde to prove, by a preponderance of the evidence, that the University's articulated reason was "a pretext or discriminatory in its application." *McDonnell Douglas*, 411 U.S.

at 807, 93 S.Ct. at 1826. *See Lynn*, 656 F.2d at 1345.

■ The district court found that Laborde had not sustained her burden of proving that the University's refusal to promote her was based on her sex and not on legitimate reasons. We review this finding under the clearly erroneous standard of Fed.R. Civ.P. 52(a). *Pack v. Energy Research & Development Administration*, 566 F.2d 1111, 1113 (9th Cir. 1977). Read in its entirety, the record precludes a finding that the district court was clearly erroneous.

For the academic years prior to 1978–79, Laborde introduced scant evidence to support her allegation of discrimination. She was considered for promotion to full professor during the academic years 1973–74, 1975–76, 1976–77, 1977–78, and in 1979. Each time, the University decided against promotion, although as a result of these evaluations, she was given merit increases in 1973–74, 1975–76, and again in 1979, to her present rank of Associate Professor Step V. By 1979 she had published four books of scholarly criticism in the field of eighteenth-century French literature, two books of poetry, and numerous articles and book reviews, and had read several papers at academic conventions.

The decision to promote a faculty member to full professor undergoes several

---

4. The district court found:

> Certain testimony and documentary evidence supported plaintiff's contention that the University has underutilized women in the areas of numbers employed, rates of pay, ladder rank positions and promotions for tenure. The School of Humanities, of which plaintiff's Department is a part, underutilizes women in the ladder ranks—full, associate and assistant professors. The 1975–77 affirmative action status report stated the Humanities program had the second highest female ladder rank headcount disparity. The report further noted that 61% of the female faculty members were at a nontenured level as opposed to 27% of the male ladder rank faculty members. Further, the Dean of the School of Humanities testified that, while the availability of women in the Humanities program is approximately 30%, only about 12% of those women have tenure. Thus on a purely statistical basis in the years 1975–1977 women faculty members were treated

differently at Irvine University than their male counterparts.
> 495 F.Supp. at 1071.

5. This court recently reviewed the proper role statistical data should play in disparate treatment cases. In *Lynn v. Regents of the University of California*, 656 F.2d 1337, 1342–43 (9th Cir. 1981), we stated:

> The Supreme Court has stated that general statistical data is helpful in individual employment discrimination cases. It is particularly helpful in the academic context, where the tenure decision is highly subjective. It is relevant despite the fact that the data may not be directly probative of any of the four specific elements [required for a prima facie case]. Proof of a general pattern of sex discrimination is, in any event, evidence which tends to establish that it is "more likely than not" that a University's decision to deny tenure was based on sex, "a discriminatory criterion illegal under the Act."

stages of review.[6] At the first step in the review process, the candidate's department reviews the candidate and makes a recommendation for promotion. In 1976–77, 1977–78, and in 1979, Laborde's department made no recommendation for promotion. All of the outside scholars suggested by Laborde were contacted for the 1975–76 and 1976–77 reviews. In 1977–78, three of the four letters solicited and received were from scholars suggested by Laborde. One was from a woman. Of the eight new scholars contacted in the fall of 1978, three were selected by Laborde, including two women. The district court found that although a majority of these evaluations supported Laborde's promotion, they "provide[d] a mixed picture of plaintiff's scholarship." Somewhat less generously, the University characterized them as damnably faint in their praise. Accordingly, the collective academic judgment of the University was that Laborde did not meet the requisite standard of excellence in research and scholarship required for promotion to full professor. Instead, she was given a merit increase to Associate Professor Step V.

The district court found that Laborde had failed to prove by a preponderance of the evidence that she was denied promotion on the basis of her sex and not her deficient scholarship. This finding was not clearly erroneous. We do not discredit Laborde's academic qualifications by adopting the University's description of her work as "inadequate" or "deficient." In reviewing her academic file, which contains many favorable comments, we recognize that her scholarship has already been considered worthy of several promotions to her present rank of Tenured Associate Professor Step V, which is just one step below full professor. The district court found that the University reasonably decided that, although good, her scholarship did not meet the University's high standards of academic excellence necessary for promotion to the highest faculty rank in the University. This finding was not clearly erroneous.

■ Laborde argues that the district court erred by denying her request to inspect the University's peer review files as untimely. Laborde's motion was made shortly before trial, and months after discovery was to have been completed. The motion would never have been filed but for a last minute change of judges. The action had been pending before Judge Williams, who had denied access to the University's files in a substantially identical case in which Laborde's attorneys also represented the plaintiff. See *Lynn*, 656 F.2d 1337. Because Laborde's attorneys saw no point in making the same motion before the same judge, they did not make it. They filed the motion only after the case was transferred to Judge Hatfield. When the motion was heard at the time of trial, Laborde refused the court's offer of an *in camera* inspection and gave no explanation for the delay. Under these facts, it was not an abuse of discretion for the trial judge to have denied the motion as untimely.

AFFIRMED.

### ORDER

The panel as constituted in the above case has voted to deny the petition for rehearing and reject the suggestion for rehearing en banc. A modified opinion has been filed.

The full court has been advised of the suggestion for rehearing en banc, and a judge in active service requested that a vote be taken. Fed. R. App. P. 35(b). Upon the vote of the judges in active ser-

---

**6.** First, the candidate's department prepares a file on the candidate. It includes his or her scholarly writings and letters of recommendation solicited from outside scholars in the candidate's field, some of whom are suggested by the candidate. The department makes a recommendation, which it sends along with the file to the Dean of the candidate's school. The dean adds his or her recommendation to the file and forwards it to the academic personnel committee of the academic senate. This committee appoints an ad hoc committee to consider the promotion. When a woman is under consideration for promotion, at least one member of the committee is a woman. Next, the executive vice chancellor adds his or her recommendation and forwards the file to the chancellor, who makes the ultimate decision. If the chancellor's proposed decision is contrary to the recommendations in the file, those submitting recommendations are permitted to submit additional information.

**720**

vice, a majority voted against en banc rehearing.

The petition for rehearing is denied and the suggestion for a rehearing en banc is rejected.

FERGUSON, Circuit Judge, dissenting from an en banc vote.

This dissenting statement is filed by reason of the failure of the court to consider this case en banc.

The panel opinion presents the strongest case possible that Alice Laborde is the victim of invidious sex discrimination.

The opinion states in clear language that men with qualifications similar to hers have been promoted to full professor positions.

Yet the opinion concludes that she is not entitled to promotion because she failed to meet the University's standards for scholarship and research.

The logical conclusion of that analysis is that men who do not meet the standards of scholarship and research will be promoted but women will not unless they meet the standards. Title VII prohibits that type of discrimination.