862 F.2d 314
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Pramod K. SHARMA, Plaintiff-Appellant,
v.
LOCKHEED ENGINEERING & MANAGEMENT SERVICES COMPANY, INC.,
Defendant-Appellee.
Pramod K. SHARMA, Plaintiff-Appellant,
v.
LOCKHEED ENGINEERING & MANAGEMENT SERVICES COMPANY, INC.,
Defendant-Appellee.
 Nos. 87-3134(L), 88-3055.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 4, 1988.
Decided Nov. 7, 1988.
 
 Stephen Howard Ring for appellant.
 James Patrick Gillece, Jr. (Richard Hafets, Emmett F. McGee, Jr., Piper & Marbury on brief) for appellee.
 Before POWELL, Associate Justice (Retired), HARRISON L. WINTER, Chief Judge, and MURNAGHAN, Circuit Judge.
 HARRISON L. WINTER, Chief Judge:
 
 
 1
 The district court entered summary judgment for defendant, Lockheed Engineering & Management Services Co. (Lockheed), in a suit brought by Pramod K. Sharma for alleged discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. and 42 U.S.C. Sec. 1981, and for state law causes of action for breach of contract and intentional infliction of emotional distress.[1]
 
 
 2
 Sharma appeals, contending that the district court committed reversible error in denying him the right to take the deposition of the president of Lockheed, Robert Young, and in ruling that his state claim for breach of contract was barred by the applicable statute of limitations and the statute of frauds.[2] We think that Lockheed was entitled to judgment on Sharma's breach of contract claim, albeit for reasons in addition to those assigned by the district court, and that entry of the order prohibiting the taking of the deposition was not an abuse of the district court's discretion. We therefore affirm the judgment for Lockheed.
 
 I.
 
 3
 Sharma, an engineer of Indian origin, was employed by Lockheed in 1981 as a computer programmer to work at Lockheed's Houston, Texas facility. Because of the nearing completion of its government contract and the consequent need to reduce the number of its employees, Lockheed advised him in the fall of 1982 that he would be laid off. He was, however, offered a position in Lockheed's Greenbelt, Maryland facility.
 
 
 4
 Prior to learning that he would be laid off or transferred, Sharma had had built a house in Houston to his specifications which he occupied as his home. He discussed his concern about the house with his supervisor George Brown who, according to Sharma, said that Lockheed would help him sell the house and if he was unable to sell it, Lockheed would purchase it from him. Based on this representation, Sharma accepted the transfer and listed his home for sale. Despite reductions in the asking price, the house did not sell, and periodically Sharma spoke to Brown who reaffirmed what Lockheed was willing to do.
 
 
 5
 In January 1983 Brown furnished Sharma with a copy of Lockheed's written relocation policy, and he was told that the policy would govern his transfer. Sharma was also given a "Relocation Order" which set forth the relocation expenses that Lockheed would pay in connection with the move to Maryland. Neither the written policy nor the order made any mention of a possible purchase of Sharma's house.
 
 
 6
 Sharma moved to Maryland some time before March 1983, and after his move he asked Brown if Lockheed would purchase his house. Sharma says that Brown said that he "would look into the matter", but Brown never made any other response. Sharma asked Lockheed in April 1983 to honor the promise to buy his house, but his demand was refused. In June 1983, Lockheed gave Sharma an accounting, itemizing its obligations with regard to the move: the accounting made no mention of a purchase of Sharma's house.
 
 
 7
 Sharma filed suit August 8, 1986.
 
 
 8
 During the course of discovery, Sharma sought to discover evidence that Lockheed, on prior occasions, had agreed to purchase houses of other employees transferring from Texas as a foundation for his claim that the promise to him was discriminatorily repudiated because he was Indian. Accordingly, Sharma requested voluminous personnel records concerning Lockheed employees and gave notice to Lockheed under F.R.Civ.P. 30(b)(6), that he desired to take the deposition of a corporate officer, employee or agent who had knowledge, inter alia, of Sharma's employment history with Lockheed and of any promises made to Sharma in connection with his 1982 move from Texas to Maryland. In response, Lockheed designated and produced Adrienne Allen, personnel manager at Lockheed's Maryland facility, who, when questioned, stated that she was not familiar with personnel procedures in Houston and that she did not know if Lockheed had ever paid for an employee's house when he was transferred from one facility to another. She also stated that she was unaware of any agreements outside of Lockheed's written policy regarding Sharma's relocation.[3]
 
 
 9
 Because he could not get the sought-after evidence from Ms. Allen, Sharma then sought to take the deposition of Robert B. Young, Jr., president of Lockheed. Lockheed resisted the taking of the deposition, and it sought a protective order based upon Young's affidavit that he had never met Sharma, that he had no personal knowledge regarding Sharma's employment, and that he knew nothing about the allegations in Sharma's complaint. After a hearing at which Sharma's counsel was given the opportunity to proffer what relevant evidence he expected to obtain from Young, the district court granted the protective order.[4] It ruled that there had been no demonstration that Young had any relevant personal knowledge and that the deposition was unduly burdensome and unwarranted.[5]
 
 
 10
 On the merits, the district court gave summary judgment to Lockheed. It ruled that Sharma had failed to produce any evidence that Lockheed's action were discriminatorily motivated or that similarly situated non-minority employees were treated preferentially. With regard to the alleged causes of action for breach of contract and intentional infliction of emotional distress, the district court ruled that it had jurisdiction because of diversity of citizenship,[6] but that the former was barred by limitations and the statute of frauds and the latter was lacking in evidentiary support. Finally, the district court awarded Lockheed counsel fees of $20,000 upon finding that Sharma's claims were "frivolous, unreasonable and groundless." Sharma does not attack the amount of this award, aside from his contention that Lockheed should not have prevailed on the merits.
 
 II.
 
 11
 We consider first the protective order preventing Sharma from deposing Young.[7]
 
 
 12
 Our decisions have made clear that discovery rulings "will not be overturned absent a showing of clear abuse of discretion." Ardrey v. United Postal Service, 798 F.2d 679, 682 (4 Cir.1986). However, in discrimination cases a particularly wide degree of latitude should be afforded plaintiffs with respect to the relevance of the requested discovery, and the district court should not "prevent a plaintiff from pursuing a theory or entire cause of action." Ardrey, 798 F.2d at 682; see also Diaz v. American Tel. & Tel., 752 F.2d 1356, 1363 (9 Cir.1985) and Duke v. University of Texas at El Paso, 729 F.2d 994, 997 (5 Cir.) cert. denied, 469 U.S. 962 (1984).
 
 
 13
 The first basis for granting this protective order--lack of relevance of the desired discovery--is supported by the record and in keeping with our previous decisions and those of other circuits. By affidavit, the proposed deponent Robert Young stated that he does not personally know Sharma and has no personal knowledge regarding the allegations of Sharma's complaint. While such a statement by itself will not always be sufficient to justify a protective order, it does establish that, in this case, Young's deposition would not have adduced evidence to establish the discriminatory intent necessary for a valid Sec. 1981 claim. At most, evidence might have been adduced that could have only indirectly supported Sharma's Title VII claim by establishing that, at least under some circumstances, Lockheed does pay real estate fees or purchase employees' homes as part of its relocation program.
 
 
 14
 The question then is whether this information was duplicative or more easily obtainable from other sources. At the time the protective order was entered, Lockheed had produced numerous personnel records requested by Sharma, and had made available for deposition Ms. Allen, the personnel manager of Lockheed's Maryland facility. Sharma's counsel had not yet undertaken a review of the more than 4500 documents despite their availability for more than one month, nor had he undertaken the depositions of individuals directly involved with Sharma and implicated in the case. Although Sharma was understandably disappointed by the testimony of Ms. Allen, there was nothing to support Sharma's claim of discrimination or his allegation regarding the relocation expense promises.
 
 
 15
 Under the circumstances, the protective order was justified. There is simply nothing to suggest that any information regarding discrimination against Sharma was not already and more easily available than through the deposition of Lockheed's president. Given the absence of specific knowledge by Young and the access to other sources of discovery, the district court's protective order on the basis of relevance was far from an abuse of discretion. Sharma could have brought a motion to dissolve the protective order if exploration of these other sources of information enabled him to articulate more specifically the relevant information to be gained from Young.
 
 
 16
 Although the question of burdensomeness was not well-developed in the record or even argued by defense counsel, the district court's finding is supported by Young's affidavit and the employment policies at issue relative to Young's role in the company. In other words, the district court's conclusion that the requested discovery was burdensome was not an abuse of discretion in light of the apparent absence of useful information to be obtained. We do not hold that the deposition of a corporate president is inherently burdensome, even where lack of knowledge is claimed, if relevant information is likely to be obtained and is not readily available elsewhere. See Mulvey v. Chrysler Corp., 106 F.R.D. 364, 366 (D.R.I.1985) and Amherst Leasing Corp. v. Emhart Corp., 65 F.R.D. 121, 122-123 (D.Conn.1974). But this is not that case.
 
 
 17
 Finally, the protective order was also within the bounds of the district court's discretion with respect to Sharma's claim for breach of contract. Even if we assume that the oral promise to pay various relocation expenses was actually made, Young's affidavit establishes that he knows nothing about that particular promise or its breach. Furthermore, there is nothing in the record to suggest that Sharma ever attempted to depose George Brown, the actual promisor, or the person Brown allegedly charged with the task of making good on that promise. Thus, Sharma's ability to recover under this theory or to avoid summary judgment on his contract claim was not clearly or materially affected by the protective order.
 
 III.
 
 18
 We consider next Sharma's alleged cause of action for breach of contract. The district court ruled, first, that it was barred by limitations. It reasoned that Maryland's three-year statute of limitations applied, Md.Cts. & Jud.Proc.Code Ann. Sec. 5-101, and that Sharma's cause of action for breach of contract accrued no later than June 9, 1983 when he received the accounting from Lockheed setting forth in writing that his claim for Lockheed's purchase of his house was not being honored. Despite this knowledge, Sharma did not institute suit until August 6, 1986. It also ruled that his claim was barred by the statute of frauds. The alleged promise was not reduced to writing and the doctrine of part performance was not applicable because Sharma's move to Maryland did not " 'relate to and be unequivocal evidence of the particular contract [alleged in the complaint]' " as required by Maryland law. Citing 2 J. Alexander, British Statutes in Force in Maryland (Coe's 2d ed. 1912) at 696 n. 3. Ssee also Beall v. Beall, 291 Md. 244, 434 A.2d 1015, 1019 (1981).[8]
 
 
 19
 We do not disagree with the reasons assigned by the district court except to note that part of the oral contract alleged by Sharma may not be within the statute of frauds; i.e., the part ancillary to the actual purchase of the house--payment of attorney's fees, real estate commissions, etc. But we think that there is an even more compelling reason why Sharma cannot prevail on his breach of contract claim. It is that the evidence of a contract between the parties is so vague and nebulous that it is impossible to tell what the contract was in order to determine if it had been breached.
 
 
 20
 If, in fact, Lockheed promised to aid or assist Sharma in disposing of his house, it is impossible to know what aid or assistance was promised. If Lockheed promised to purchase Sharma's house in the event he was unsuccessful in selling it himself, the evidence is lacking as to when the condition of the promise would be fulfilled (how exhaustive Sharma's efforts to sell it himself were required) so as to make the promise effective, and, if the promise became effective, at what price and on what other terms and conditions Lockheed would make the purchase. If Lockheed, either in connection with its purchase of the house or the sale of the house by Sharma to some third person, agreed to pay associated expenses, there was no evidence proffered to show the exact expenses to be paid or the range of amounts to be paid, actual or limited.
 
 
 21
 The burden was on Sharma to set forth these facts with sufficient specificity to establish there was a genuine issue for trial. Rivanna Trawlers Unlimited v. Thompson Trawlers, 840 F.2d 236, 239 (4 Cir.1988). We can only conclude that plaintiff has failed to carry this burden because even if a promise was made, its terms are so indefinite and unclear as to preclude an award of damages for their breach.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Sharma's complaint alleged four causes of action. The first alleged a violation of Title VII arising from retaliatory discharge, involuntary job transfer from Texas to Maryland, involuntary transfer between departments in Maryland and various other acts of discrimination by supervisory personnel. The second cause of action, predicated on 42 U.S.C. Sec. 1981, realleged the facts set forth in the first cause of action and asserted that Lockheed's actions were undertaken willfully, maliciously and with the intent to oppress him so as to warrant the award of punitive damages
 Sharma's third cause of action, also styled as a claim under 42 U.S.C. Sec. 1981, alleged a discriminatory breach of contract. It was treated by the district court as alleging both a federal discrimination claim and a state contract claim. The fourth cause of action, again referring to 42 U.S.C. Sec. 1981, merely alleged the tort of intentional infliction of emotional distress. The district court correctly deemed it to allege only a state law tort claim.
 
 
 [2]
 Before us, Sharma does not question the correctness of the district court's judgment against him on his claim for intentional infliction of emotional distress
 
 
 [3]
 By the time of Sharma's suit, Brown was no longer an employee of Lockheed. However, Brown's last address as known to Lockheed was furnished to Sharma in response to his document request. Although Brown was the obvious person from whom to seek corroboration of the promises and perhaps information regarding other transferred employees, there is nothing to suggest that Sharma sought this testimony
 
 
 [4]
 As his proffer, Sharma's counsel suggested that Young's deposition was necessary because "no one" at the Maryland facility was able to answer his questions about relocation costs and that he believed other Lockheed employees' homes had been purchased
 
 
 [5]
 However, the district court did order Lockheed to make Mr. Barry Forster available for deposition. Forster was the manager of one of the departments in the Maryland facility where Sharma had worked, and had been identified as one of the people Sharma wished to depose. Forster's deposition was subsequently taken and apparently proved unhelpful in supporting any of Sharma's claims
 
 
 [6]
 Sharma had not alleged diversity jurisdiction, but it is not disputed that the parties are citizens of different states and the requisite amount in controversy is claimed
 
 
 [7]
 Sharma does not make any contention that the district court's disposition of his alleged Title VII and Sec. 1981 causes of action should be disturbed except for its refusal to permit him to take Young's deposition
 
 
 [8]
 Before us Sharma does not argue that Texas, and not Maryland law, is applicable or, if applicable, that Texas law differs from Maryland law in this regard