Lewis J. KNIGHTON, Appellant,

v.

The LAURENS COUNTY SCHOOL DISTRICT NO. 56 and Charles L. Cummins, Jr., Appellees.

No. 82–1801.

United States Court of Appeals, Fourth Circuit.

Argued June 6, 1983.

Decided Nov. 14, 1983.

Theo W. Mitchell, Greenville, S.C. (Fletcher N. Smith, Jr., Greenville, S.C., on brief), for appellant.

James L. Edwards, Clinton, S.C. (Edwards & Howe, Clinton, S.C., on brief), for appellees.

Before WINTER, Chief Judge, HALL, Circuit Judge, and KNAPP,* Senior District Judge.

HARRISON L. WINTER, Chief Judge:

The sole issue on appeal is whether the district court erroneously failed to require defendants to rebut by "clear and convincing" evidence Lewis J. Knighton's prima facie case that he was a victim of race

---

* Hon. Dennis R. Knapp, Senior United States District Judge for the Southern District of West Virginia, sitting by designation.

discrimination violating 42 U.S.C. §§ 1981 and 1983. The district court allowed defendants to rebut by merely articulating a legitimate non-discriminatory justification for Knighton's dismissal as an elementary school principal, applying the usual *Burdine*[1] sequence of proof, with the ultimate burden of persuasion on the plaintiff. We agree with Knighton that the wrong burden may have been applied. However, because the district court failed to make a crucial finding which would determine the correct burden of proof that defendants must meet, we remand the case for further proceedings.

## I.

Lewis J. Knighton, who holds a Master of Science degree in education from South Carolina State A & M College, had thirty-one years of full-time teaching or administrative experience as of the 1978–79 school year. For twenty-seven of those years he had worked in the Laurens County School District No. 56 (District 56), including eighteen years as principal of an all-black elementary school in the previously racially segregated school system. Immediately following unification of the school district, Knighton was reassigned for three years to an assistant principalship. By the time of the termination complained of, Knighton had been principal of another District 56 school, the M.S. Bailey Elementary School, for five years.

District 56 had remained segregated until sometime during the school year 1970–71. At the end of that year, Dr. Charles L. Cummins, Jr. took over as Superintendent of Schools for the district. He continued in that role, as Knighton's superior, through all times relevant to this suit. On February 5, 1979, Cummins directed a memorandum to Knighton outlining five areas Cummins considered deficient in Knighton's performance.[2] By May 3, 1979, Cummins had decid-ed that Knighton's performance was not improved, and by letter of that date Cummins notified Knighton that he would not recommend his reemployment for the following school year. The county school board accepted Cummins' recommendation so that Knighton's principalship contract was not renewed for 1979–80. Following an appeal hearing before the Board, however, he was permitted to sign a one year non-renewable contract as an assistant to the district's truant officer, apparently an accommodation designed to allow Knighton to complete sufficient years of service so as to qualify for retirement benefits.

Knighton subsequently brought this suit, alleging that he had been singled out for special supervision and adverse treatment because he is black. He further alleged that, under Cummins' direction, the school district since desegregation had treated other black administrative personnel and teachers less favorably than whites, and that a disproportionate number of blacks had as a consequence been terminated.

At trial before a magistrate, Knighton introduced evidence in support of these allegations attempting to show that a pattern of discrimination against black school personnel had developed. Knighton recalled a total of six "excellent" black teachers discharged by Cummins between 1972 and 1977. He testified that Cummins and other district officials attempted to pressure him into "intimidating" one of these teachers into resigning, and that when she finally did, she was replaced by a white teacher. Knighton further explained that while white principals typically were permitted to use "short form" teacher evaluation reports for white subordinates, reports that were simple to prepare and that by their use indicated that the teacher in question was basically performing well, black principals were instructed to use a "long form" that was needlessly detailed, time-consuming to

---

1. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

2. Cummins listed (1) planning and organization, (2) communication, (3) decision making, (4) supervision of instruction, and (5) effective student control. A sixth area, interpersonal relationships, was added subsequently by Cummins.

prepare, and implied that the evaluated black teacher had performance problems requiring careful monitoring. As another illustration of discriminatory treatment, Knighton testified that although a black teacher had been denied a relatively routine release from her contract to provide her enough time to find a job in another school district, white teachers were typically granted such releases.

Although the issue was plainly raised, neither the magistrate nor the district court made any finding for or against Knighton as to whether there was in fact a pattern of discriminatory treatment of black personnel following unification of the school system. Instead, they confined their analysis of the evidence to the burden-shifting sequence set out in *Burdine,* 450 U.S. at 248, 101 S.Ct. at 1091, with the ultimate burden of persuasion on plaintiff. Accordingly, the magistrate first concluded that Knighton had established a prima facie case of discrimination in light of his qualifications and his race. The burden then ascribed to defendants was only to articulate a legitimate, non-discriminatory reason for the termination. This burden the magistrate found met by defendants' production of evidence supporting their contention that Knighton lacked the ability to perform effectively as a principal. The magistrate therefore concluded that Knighton failed to prove discrimination, the district court affirmed the magistrate's findings and conclusions, and judgment was entered for defendants.

## II.

The burden-shifting issue raised by Knighton was authoritatively settled in our decision last year in *Evans v. Harnett County Board of Education,* 684 F.2d 304 (4 Cir.1982).[3] In *Evans,* a black former school principal established that race discrimination continued to pervade a school district's personnel practices despite desegregation seven years before he had applied there for a job, and he asserted that this discrimination was the reason for his rejection. The district court in *Evans* also had apparently applied the *Burdine* burden-shifting sequence and found for defendants. We reversed, holding the application of *Burdine* inappropriate:

> While these principles govern the evaluation of most Title VII claims based on a disparate treatment theory, the courts repeatedly have concluded that shifting the burden of persuasion to the defendant is proper in certain circumstances. *Primary among the conditions warranting this shift is a finding of either intentional segregative action or a recent history of racial discrimination in a school system.* Keyes v. School Dist. No. 1, 413 U.S. 189, 208–10, 93 S.Ct. 2686, 2697–98, 37 L.Ed.2d 548 (1973); *Chambers v. Hendersonville City Board of Education,* 364 F.2d 189, 192 (4th Cir.1966).

684 F.2d at 307 (emphasis added).[4] Both *Keyes* and *Chambers,* on which *Evans* relied, are specific in saying that in such circumstances the defendants' burden to justify their conduct requires clear and convincing evidence.

In the instant case, however, the district court made no findings as to whether there was evidence of a recent history of racial segregation in the Laurens County school system or evidence of intentional segregative action. As *Evans* indicates, such a finding is crucial because if the district court finds *either* that there was intentional segregative action *or* a recent history of racial discrimination in a school system, it must weigh defendants' defense by the clear and convincing evidence test rather than by the *Burdine* test, which places the ultimate burden on plaintiff to establish racial discrimination by a preponderance of

---

**3.** Neither the magistrate nor the district court, apparently, had the benefit of our opinion in *Evans* during their deliberations over this case; *Evans* was decided July 27, 1982, while the district court opinion here was filed just six days later. *Evans,* however, only reiterated long-established principles and in no way was

an unexpected departure from past law. *Cf. Reynolds v. Abbeville City School District No. 60,* 554 F.2d 638, 642 (4 Cir.1977).

**4.** In *Evans,* reversal was based solely upon the former of these conditions.

the evidence. We therefore vacate the judgment of the district court and remand the case for these findings and a determination anew of which party is to prevail.[5]

VACATED AND REMANDED.

---

5. The determination may be made on the present record, but either party shall have the right to adduce additional relevant evidence and to seek further discovery. In oral argument counsel for plaintiff contended that plaintiff's proof was limited because of defendant's failure to respond to plaintiff's efforts at discovery. On remand plaintiff shall have the right to require discovery if he can establish defendant's improper non-compliance.