905 F.2d 1530
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Mumtaz Bano KHAN, Plaintiff-Appellant,
v.
Jimmy R. JENKINS, John H. Carson, Elizabeth City State
University, Defendants-Appellees,
and
Marion D. Thorpe, Defendant.
 No. 89-1750.
 United States Court of Appeals, Fourth Circuit.
 Argued April 6, 1990.
Decided June 5, 1990.
As Amended June 13, 1990.
Rehearing and Rehearing In Banc Denied June 27, 1990.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Elizabeth City. W. Earl Britt, Chief District Judge. (CA-82-39-2-CIV).
 Oldric Joseph LaBell, Jr., Newport News, Virginia, for appellant.
 Thomas J. Ziko, Assistant Attorney General, North Carolina Department of Justice, Raleigh, North Carolina, for appellees.
 Lacy H. Thornburg, Attorney General, North Carolina Department of Justice, Raleigh, North Carolina, on brief, for appellees.
 E.D.N.C., 814 F.2d 655.
 AFFIRMED.
 Before ERVIN, Chief Judge, and K.K. HALL and CHAPMAN, Circuit Judges.
 ERVIN, Chief Judge:
 
 
 1
 In this action, Mumtaz Bano Khan, an Asian American, alleged that the defendants violated Title VII of the Civil Rights Act of 1964 (42 U.S.C. Secs. 2000e et seq.), 42 U.S.C. Sec. 1983, and 42 U.S.C. Sec. 1981 by discriminating against her on the bases of gender and race in assigning salary levels and work assignments. At the close of Khan's evidence, the district court granted the defendants' motions for directed verdict on Khan's section 1981 and section 1983 claims, and dismissed her remaining Title VII claim. For the reasons explained below, we affirm the decisions of the district court.
 
 I.
 
 2
 Khan is a United States citizen of Pakistani origin. In August 1971, she was hired by the defendant Elizabeth City State University ("ECSU" or "the University") as an instructor in its Business and Economics Department. Defendant John H. Carson is chairman of the Business and Economics Department, and defendant Jimmy R. Jenkins is the University Vice Chancellor for Academic Affairs. ECSU is part of the University of North Carolina system and is a state institution. Historically, it was an all-black college and has maintained a black majority in its administrative positions, faculty, and student body.
 
 
 3
 ECSU had employed Khan as an instructor under a series of one-year contracts for a period of seven years beginning in 1971. The last of these one-year contracts covered the 1977-78 academic year. According to the University's tenure policies, appointments to the rank of instructor, an untenured position, are limited to seven years. A faculty member who has been an instructor for seven years must either be promoted, demoted to a "special faculty" (lecturer) position, or released from employment. To be promoted to the position of assistant professor, an instructor must complete thirty semester hours of study above a master's degree.
 
 
 4
 Khan had enrolled in a correspondence Ph.D. program from California Western University ("CWU"), an unaccredited institution. CWU gave Khan credit for her "life experiences"; therefore, even though she completed the course requirements for the degree, she never completed thirty hours of actual course work.[1] Consequently, ECSU offered Khan an appointment as a lecturer for the 1978-79 academic year, which she accepted.
 
 
 5
 After Khan's first year as a lecturer, ECSU decided to terminate her employment at the end of the following year. ECSU notified Khan of its intent by a letter dated July 31, 1979, attached to a one-year contract specifying that her appointment for the 1979-80 academic year was terminal. Khan protested the decision, but did subsequently sign the contract on August 14, 1979.
 
 
 6
 After being demoted to "lecturer" status, Khan filed a charge with the Equal Employment Opportunity Commission ("EEOC") on November 7, 1978, alleging that ECSU had denied her promotion, tenure, and equal pay because of her race and gender.[2] The EEOC did not take any immediate action on this first charge. In 1980, shortly before her termination, Khan filed a second charge with the EEOC again claiming that the University had, because of her race and gender, demoted her, denied her tenure, terminated her employment and failed to pay her a salary equal to that paid to similarly situated faculty members. The EEOC issued Khan a right to sue letter on her first EEOC charge on August 28, 1981, but she failed to file any action based on that letter. On September 30, 1982, the EEOC issued Khan a second right to sue letter on her second charge.
 
 
 7
 On January 14, 1983, Khan served the University with a pro se complaint alleging that it had discriminated against her under Title VII when it denied her tenure, failed to promote her, terminated her employment, and paid her an unequal salary. That complaint was amended, with the assistance of counsel, on January 25, 1984, to include claims for relief under 42 U.S.C. Sec. 1981, 42 U.S.C. Sec. 1983, 29 U.S.C. Sec. 621 (the Age Discrimination in Employment Act ("ADEA")), and 29 U.S.C. Sec. 206 (the Equal Pay Act).
 
 
 8
 The district court granted summary judgment for the University on all of Khan's claims, except those asserted under the Equal Pay Act, on the grounds that Khan had either failed to file a charge alleging a violation of her rights with the EEOC within 180 days of the discriminatory acts alleged or had failed to file the complaint within the appropriate statute of limitations. The parties settled Khan's claim under the Equal Pay Act.
 
 
 9
 Khan appealed this summary judgment, and this court affirmed the district court's dismissal of Khan's ADEA claim and her civil rights claims relating to the denial of tenure, the denial of promotion, and discriminatory termination. This court, however, relying on the principle that denial of equal pay and work assignments is a "continuing violation," reversed and remanded the district court's order dismissing the claims under section 1981, section 1983, and Title VII. Khan v. Jenkins, No. 85-2252 (4th Cir. Mar. 19, 1987).
 
 
 10
 These remaining claims were tried on May 9, 1989, in the United States District Court for the Eastern District of North Carolina. A jury was present at trial to hear the evidence relevant to the section 1981 and section 1983 claims, and the district court judge was the factfinder for the Title VII claims. At the conclusion of Khan's evidence, the district court, pursuant to Fed.R.Civ.P. 41(b), dismissed Khan's Title VII claims, and, pursuant to Fed.R.Civ.P. 50(a), directed a verdict for the defendants on all her other claims.
 
 
 11
 Khan appeals from these decisions.
 
 II.
 
 12
 An appeal from a motion for a directed verdict is reviewed de novo. Gairola v. Commonwealth of Va. Dept. of General Services, 753 F.2d 1281, 1285 (4th Cir.1985). In other words, "in determining whether the verdict in this case should have been directed, we must apply the same standard [that was or should have been] employed by the district court in passing on the original motion." Tights, Inc. v. ACME-McCrary Corp., 541 F.2d 1047, 1055 (4th Cir.), cert. denied, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976). The test for a directed verdict, at either the trial or the appellate level, is "whether there was sufficient evidence to support a verdict for the party opposing the motion." Id.; see also Lust v. Clark Equipment Co. Inc., 792 F.2d 436, 437-38 (4th Cir.1986); cf. Gairola, 753 F.2d at 1285 ("whether there can be but one conclusion as to the verdict that reasonable jurors could have reached").
 
 
 13
 Factual findings by the court in Title VII cases can only be reversed on appeal if they are clearly erroneous. See Mallory v. Booth Refrigeration Supply Co., Inc., 882 F.2d 908, 909 (4th Cir.1989).
 
 III.
 
 14
 Khan brought her Title VII claim under a "disparate treatment" theory that Asian Americans were paid less and given more difficult work assignments at ECSU than Black Americans.[3]
 
 
 15
 In Title VII disparate treatment cases,[4] the plaintiff has the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination. See, e.g., Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253-54, 101 S.Ct. 1089, 67 L.Ed.2d 207, 215-17 (1981). To establish a prima facie case, the plaintiff must raise an inference that the defendant acted with discriminatory intent, i.e., plaintiff's adverse employment action occurred " 'under conditions which, more likely than not, were based upon impermissible racial considerations.' " Gairola, supra, at 1286 (quoting Young v. Lehman, 748 F.2d 194, 196 (4th Cir.1984), cert. denied, 471 U.S. 1061, 195 S.Ct. 2126, 85 L.Ed.2d 489 (1985)). In addition to direct and circumstantial evidence of discriminatory treatment, plaintiffs can meet their burden using the Supreme Court's model set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 37 L.Ed.2d 668, 677 (1973). The McDonnell Douglas analysis, as applied to unequal pay claims, requires a plaintiff to show: (1) that she is a member of a protected class; (2) that she is as qualified as employees not of the protected class; and (3) that she was paid less than these other comparably qualified employees. See Bazemore v. Friday, 751 F.2d 662, 670 (4th Cir.1984), aff'd in part, rev'd in part on other grounds, 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (per curiam).
 
 
 16
 In most employment discrimination cases, the most difficult element of a prima facie case for a plaintiff to show is causation or motivation--did the defendant take the action in question because of the plaintiff's race, sex, national origin or age? A plaintiff can meet her original production burden on this issue by the McDonnell Douglas presumption framework described above, by direct evidence (which is rarely available), or by indirect circumstantial evidence with sufficient cumulative probative force to support an inference of discrimination. See Loeb v. Textron, 600 F.2d 1003, 1017 & n. 18 (1st Cir.1979) (discussing alternative methods of establishing a prima facie case).
 
 
 17
 Perhaps the most thorough discussion in this circuit of the sufficiency of evidence of discriminatory motivation to establish a prima facie case can be found in Lovelace v. Sherwin-Williams Co., 681 F.2d 230 (4th Cir.1982) (affirming the district court's grant of judgment notwithstanding the verdict for defendants in an ADEA case). In Lovelace, this court emphasized the need for evidence showing a "reasonable probability," not just a mere possibility, of discriminatory motivation. Id. at 241-42 (discussing prior Fourth Circuit precedents).
 
 
 18
 This emphasis, where causation is dispositive, upon "probability," "reasonable probability," "substantial probability" rather than mere "possibility" as the proper test simply bespeaks the special danger that in a matter so generally incapable of certain proof jury decision will be on the basis of sheer speculation, ultimately tipped, in view of the impossibility of choosing rationally between mere "possibilities," by impermissible but understandable resort to such factors as sympathy and the like. It is of course precisely to guard against this danger that the burden of producing rationally probative evidence--and the corresponding risk of nonproduction--is placed upon claimants and subjected to the ultimate jury control devices of directed verdict and judgment n.o.v.
 
 
 19
 Id. at 242 (citations omitted). The determinative question before this court is whether the cumulative effect of this evidence is sufficient to show a "substantial probability" of discrimination in setting salary levels at the University.
 
 
 20
 In the present case, there is no direct evidence of discriminatory intent to pay Asian instructors less than Black faculty. Khan also fails to invoke the presumption of discrimination under McDonnell Douglas because she is unable to point to other similarly situated instructors who were paid more than she was. Khan attempted to compare her salary with that of two Black faculty members at ECSU. Evelyn Roberts, a Black instructor in the Business and Economics Department, was hired in 1972, one year after Khan. Although she received a higher salary than Khan and in 1979 was promoted to Assistant Professor, Roberts completed thirty semester hours of study beyond her master's degree at UNC-Greensboro and therefore fulfilled the requirements for promotion. Dandeson Panda was hired as an instructor in 1979 at a salary $600 higher than Khan's. Khan, however, by that time, had been demoted to a position as lecturer and therefore was not at the same level as Panda.
 
 
 21
 In addition, her indirect evidence of instances of alleged discrimination in other areas at ECSU and statistical evidence does not establish a reasonable probability of discrimination in salary levels. In 1977, there were five Asian faculty members in Khan's department but only one remained as of 1980. There is no evidence, however, linking the departure of the other four faculty members with any deliberate discrimination by the University or its officials.[5] Khan also introduced statistical evidence that was considered in support of her Title VII cause of action against the University. The evidence did not show significant differences in salaries paid Asians and Blacks in the relevant years of 1978-79 and 1979-80. Even if there was a statistically significant difference between the salaries of Blacks and non-Blacks during these years,[6] this difference does not establish a prima facie case that ECSU discriminated against Khan, who was Asian, when there is no legally significant difference in the salaries of Asians and Blacks.
 
 
 22
 Because Khan's evidence did not raise an inference that any of the defendants acted with discriminatory intent, the district court did not err in dismissing her employment discrimination claims pursuant to Fed.R.Civ.P. 41(b). Moreover, Khan did not present evidence sufficient to support a verdict that Carson or Jenkins deprived her of equal "rights, privileges or immunities secured by the Constitution and laws." 42 U.S.C. Sec. 1983. Therefore, directed verdicts for the defendants were also proper on her section 1983 and section 1981 claims.[7]
 
 IV.
 
 23
 Khan also claims that the district court erred in excluding the statistical evidence, which was summarized above, from her section 1981 and section 1983 claims against Carson and Jenkins. Dr. Carson was appointed chairman of the Department of Business and Economics in 1977. Dr. Jenkins became ECSU Vice Chancellor for Academic Affairs in 1977. Before the 1978-79 academic year, neither man had any responsibility for salaries. The statistical evidence indicated no significant differences between the salaries of Asians and Blacks after 1977. Therefore, the court excluded this evidence as nonprobative with regard to Khan's claims against Carson and Jenkins.[8]
 
 
 24
 The decision to exclude expert statistical evidence lies within the sound discretion of the trial judge and should not be disturbed unless such decision constitutes an abuse of discretion. See Herold v. Hajoca Corp., 864 F.2d 317, 321 (4th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989). We find that the district court's decision to exclude this evidence was not an abuse of discretion.
 
 V.
 
 25
 As her final argument on appeal, Khan asserts that the defendants refused to comply with discovery requests for information indicating the race of the faculty and their salaries. The defendants did produce budget documents, called BD-119s, which showed the salary that faculty members earned the preceding year, but the University did not disclose information regarding the race of the faculty.
 
 
 26
 After this court remanded this case in 1987, Khan requested leave to conduct further discovery and asserted that the University had not fully responded to earlier discovery motions. The magistrate directed Khan to submit for the court's approval "a proposed discovery schedule setting forth with specificity the discovery desired, including the number of interrogatories and requests for production[,] and certification of counsel that it is not duplicative of any prior discovery request." Khan submitted a proposed discovery schedule on May 9, 1988, but did not certify that it would not be duplicative of earlier requests. The schedule did not attempt to explain why certification was not appropriate or why additional discovery was needed. In light of Khan's failure to comply with his earlier order, the magistrate denied the motion for additional discovery, and the magistrate's decision was subsequently affirmed by the district court. Khan's later efforts to secure additional discovery were not timely and, as the magistrate found, clearly would have prejudiced the defendants' preparation of their defense.
 
 
 27
 It is well established that district courts have wide latitude in controlling the scope and course of discovery, and their decisions regulating discovery should not be overturned absent clear proof of an abuse of discretion. See, e.g., Ardrey v. United Parcel Service, 798 F.2d 679, 682 (4th Cir.1986), cert. denied, 480 U.S. 934, 107 S.Ct. 1575, 94 L.Ed.2d 766 (1987). We find no clear proof that the district court abused its discretion in denying Khan's incomplete, and then untimely, requests for discovery.[9]
 
 VI.
 
 28
 After considering all of the evidence in the record and the parties' arguments as presented orally and in their briefs, we hold that the district court properly granted directed verdicts on Khan's section 1981 and section 1983 claims and properly dismissed her Title VII claim. Further, we find no abuse of discretion in either the exclusion of some of the statistical evidence or the district court's management of discovery prior to trial. Therefore, the decisions of the district court are
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 Furthermore, Khan failed to provide ECSU with an official transcript of her studies at CWU until after her termination
 
 
 [2]
 There is no evidence in the record of any discrimination on the basis of gender
 
 
 [3]
 In her discriminatory work assignment claim, Khan failed to show any disparate treatment. She was required to teach fifteen semester hours in the fall of 1978-79, three more than the normal teaching load. It was not unusual, however, at ECSU for faculty members, regardless of race, to teach fifteen hours in a semester
 
 
 [4]
 The disparate treatment of employees is prohibited by Section 703(a)(1) of Title VII, which states:
 It shall be an unlawful employment practice for an employer:
 (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.
 42 U.S.C. Sec. 20003-2(a)(1).
 
 
 [5]
 Khan asserts that Carson told her that it was the policy of the administration "to get rid of all the Asians" and replace them with Blacks. Carson denied ever having made such a statement. Nevertheless, considering this testimony in the light most favorable to Khan, it is nothing more that Carson's opinion of the ECSU "administration." There is no evidence of any actual efforts to eliminate Asian faculty from the University, and this statement certainly is not sufficient to establish a substantial probability of discrimination with regard to salary levels
 
 
 [6]
 The standard deviation in the salaries of Blacks and non-Blacks in 1979-80 was 2.99. This court has held that "courts should be extremely cautious in drawing conclusions [of legal significance] from standard deviations in the range from one to three" but that deviation of more than three can safely be used to exclude chance as a hypothesis and confirm an inference of discrimination. E.E.O.C. v. American National Bank, 652 F.2d 1176, 1192 (4th Cir.1981), cert. denied, 459 U.S. 923, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982); E.E.O.C. v. Federal Reserve Bank of Richmond, 698 F.2d 633, 647-48 (4th Cir.1983), rev'd in part on other grounds sub nom. Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984). Because a statistical comparison of the salaries of Blacks and non-Blacks is not as instructive in this case as a comparison of the salaries of Asians and Blacks, we need not decide whether this difference is legally sufficient to establish an inference of discrimination
 
 
 [7]
 In Patterson v. McLean Credit Union, 491 U.S. ----, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court held that 42 U.S.C. Sec. 1981 applies only to two distinct rights: the right to make contracts and the right to enforce contracts. 491 U.S. at ----, 109 S.Ct. at 2373, 105 L.Ed.2d at 150. Following the Patterson decision, section 1981 does not provide an independent cause of action against the defendants for salary discrimination
 
 
 [8]
 In addition, as explained in note 6, supra, the evidence showing disparities in the salaries of Blacks and non-Blacks was not relevant to Khan's claims
 
 
 [9]
 Even if the magistrate and trial court judge erred in not compelling further discovery, the additional information requested by Khan would not have had any effect on the results in this case. Using information provided by the defendants and material readily available to her, Khan was able to produce an extensive statistical analysis of salaries paid male, female, White, Black, and Asian faculty at ECSU. Khan's expert testified regarding the results of this analysis, and the district court admitted his testimony as evidence in support of her Title VII claims against the University. Khan apparently was able to obtain from other sources the information necessary for her statistical analysis; thus, as an alternative basis for our holding, we find any error in the court's denial of Khan's motions to compel discovery to be harmless. Cf. LaRouche v. National Broadcasting Co., Inc., 780 F.2d 1134, 1139 (4th Cir.1986) (availability of information from alternative sources is a relevant factor in determining whether district court abused its discretion in denying motion to compel discovery)